AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*
INFORMATION ASSOCIATED WITH SNAPCHAT USERNAME RUGGWOOD THAT IS STORED AT PREMISES CONTROLLED BY SNAP INC.

)
)
)
)
)
)
)

FILED

MAY – 6 2024

CLERK U.S. DISTRICT COURT
NEWPORT NEWS, VA

UNDER SEAL

Case No. 4:24sw77

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Central _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC § 2422(b) | Coercion and Enticement of a Minor |

The application is based on these facts:
See affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

REVIEWED AND APPROVED:

Devon Heath
Assistant United States Attorney

_____
*Applicant's signature*

Desirae Maldonado, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 05/06/2024 _____

City and state: Newport News, Virginia

_____
*Judge's signature*

The Honorable Douglas E. Miller, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### DESCRIPTION OF THE PREMISES TO BE SEARCHED

This warrant applies to information associated with the Snapchat Accounts (the "**SUBJECT ACCOUNT**"): **ruggwood** in any part of the period of <u>August 1, 2021 to present</u>; that is stored at premises owned, maintained, controlled, or operated by Snap Inc. and headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405.

## ATTACHMENT B
### Particular Things to be Seized

I.    I.    **Information to be disclosed by Snap, Inc.,**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snapchat, Inc., Snapchat, Inc., is required to disclose the following information to the government for the account or identifier listed in Attachment A. Such information should include the below-described content of the subject account including any messages, records, files, logs, or information that have been deleted, but are still available to Snap, Inc., or have been preserved from Snapchat username **ruggwood.**

All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Snapchat passwords, Snapchat security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(a)    All activity logs for the account and all other documents for previous naps, stories and Chats, to include any metadata and/or content.

(b)    Content of sent snaps; story content, chat content;

(c)    Content of user's Memories, My Eyes Only, Snapchat's cloud-storage service;

(d)    All Logs, including sender, recipient, date, and time, concerning the previous Snaps sent to or from the Snapchat account of the above users; to include IP addresses associated to accounts listed above.

(e)    The types of service utilized by the user;

(f)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(g)    All privacy settings and other account settings, including privacy settings for individual Snaps, and all records showing which Snapchat users have been blocked by the account;

(h)    Any and all location data associated with the **SUBJECT ACCOUNT**;

(i)    All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

1.    All information described above in Section I, including correspondence, records, documents, photographs, videos, electronic mail, chat logs, and electronic messages that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2422(b) including, for each account or identifier listed on Attachment A, information pertaining to the following matters, including attempting and conspiring to engage in the following matters:

    a. Any person knowingly engaged in the sexual exploitation of children, as described in 18 U.S.C. § 2422(b).

2.    Credit card and other financial information including but not limited to bills and payment records;

3.    Evidence of who used, owned, or controlled the account or identifier listed on Attachment A;

4.    Evidence of the times the account or identifier listed on Attachment A was used;

5.    Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A and other associated accounts.

## III.    Disclosure by provider - By Order of the Court

1.    Snap, Inc. shall disclose responsive data, if any, by sending to FBI, Attn: SA Desirae Maldonado, 11827 Canon Blvd., Suite 300, Newport News, VA, 23606, using the US Postal Service or another courier service or electronic means notwithstanding 18 U.S.C. § 2422(b) or similar statute or code.

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT USERNAME **RUGGWOOD** THAT IS STORED AT PREMISES CONTROLLED BY SNAP INC. | Case No. 4:24-SW-77<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

**INTRODUCTION AND AGENT BACKGROUND**

I, Desirae Maldonado, being duly sworn, hereby depose and state:

1.      I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation (FBI). I have been employed by the FBI as a Special Agent since January 2019. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States, who is empowered by law to conduct investigations regarding violations of United States law, to execute warrants issued under the authority of the United States, and to make arrests of the offenses enumerated in 18 U.S.C. §§ 2251 *et. seq.* In the course of my duties, I am responsible for investigating crimes which include, but are not limited to, child exploitation and child pornography. I have previously been involved in criminal investigations concerning violations of federal laws. Since joining the FBI, I have received specialized training in human trafficking investigations, identifying and seizing electronic evidence, computer forensics, recovery, and social media investigations.

2.      The information set forth in this affidavit is known to me as a result of an investigation personally conducted by me and other law enforcement agents. Thus, the statements in this affidavit are based in part on information provided to Special Agents ("SAs") and other employees of the FBI, as well as other investigators employed by federal or state governments. I have participated in investigations involving persons who collect and distribute child pornography, and the importation and distribution of materials relating to the sexual exploitation of children. I have received training in the areas of child exploitation, and I have reviewed images and videos of child pornography in a wide variety of media forms, including computer media. I have also discussed and reviewed these materials with other law enforcement officers.

3.      In the course of my employment as a sworn law enforcement officer, I have participated in the execution of numerous search warrants resulting in the seizure of computers, magnetic storage media for computers, other electronic media, stored wire and electronic communications, and other items evidencing violations of state and federal laws.

-1-

## LOCATION

4.      This affidavit is made in support of an application for search warrant for

   a.  Information associated with Snapchat username: **ruggwood (SUBJECT ACCOUNT)** that is stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, California, 90405. The information to be searched is described in the following paragraphs and in Attachment A.

5.      The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and records.

6.      This affidavit is based upon information that I have gained from my investigation, my training and experience, and conversations with other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities (described in Attachments A and B) of violations of 18 U.S.C. §2422(b) are within the information associated with the account mentioned above.

7.      The purpose of this application is to seize evidence, contraband, fruits, and other items related to violations of Title 18, U.S.C. § 2422(b) relating to material involving the sexual exploitation of minors (the "Specified Federal Offense").

8.      This affidavit is made, in part, in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snap Inc. to disclose to the Government records and other information in its possession, pertaining to the subscriber or customer associated with the account, including the contents of communications.

## LEGAL AUTHORITY

### A.      Pertinent Criminal Statutes

9.      This investigation concerns alleged violations of Title 18, United States Code, § 2422(b) regarding to the coercion and enticement of minors.

10.     Title 18 U.S.C. § 2422(b) provides that whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not less than 10 years or for life.

### B.      Other Legal Authority

-2-

11.    The legal authority for this search warrant application regarding **SUBJECT ACCOUNT** is derived from 18 U.S.C. §§ 2701–2711, entitled "Stored Wire and Electronic Communications and Transactional Records Access." Section 2703(a) provides in relevant part as follows:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued under the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

12.    Title 18, U.S.C. § 2703(b) provides in relevant part as follows:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection –

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure or equivalent State warrant.

> (2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service –
>
> (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
>
> (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

13.    The government may also obtain records relating to e-mail communications, such as subscriber identifying information, by way of a search warrant. 18 U.S.C. § 2703(c)(1)(A).

14.    This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction," as defined by 18 U.S.C. § 2711(3). 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a "district court of the United States . . . that . . . has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

-3-

Snap Inc. accepts out-of-state and out-of-district service of subpoenas, court orders, and search warrants through its law enforcement website without the presence of a law enforcement officer. Accordingly, I will execute the requested search warrant by submitting it through that website to the custodian of records at Snap Inc., and I request permission for the data to be copied/obtained outside of the presence of a law enforcement officer. Because Snap Inc. will compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. It is anticipated that Snap Inc. will produce the requested records in electronic format accompanied by a signed authentication letter via e-mail, download, or on electronic media via U.S. Mail to me.

15.    This investigation involves offenses within the jurisdiction and proper venue of the United States District Court for the Eastern District of Virginia, as more fully articulated below. *See* 18 U.S.C. § 3237(a); *see also* 18 U.S.C. §§ 3231 and 3232. *See United States v. Bagnell*, 679 F.2d 826, 830 (11th Cir. 1982) (venue is proper in child pornography and obscenity prosecution in district where images were either distributed or received).

## DEFINITIONS

13.    The terms "records," "documents," and "materials" include all information recorded in any form, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including, but not limited to the following:
   a.    graphic records or representations;
   b.    photographs;
   c.    pictures;
   d.    images, and
   e.    aural records or representations.

14.    The terms "records," "documents," and "materials" include all of the foregoing, in whatever form and by whatever means, the records, documents, or materials, and their drafts, or their modifications may have been created or stored, including (but not limited to): any electrical, electronic, or magnetic form (including but not limited to any information on an electronic or magnetic storage device such as hard disks).

15.    The terms "minor" and "sexually explicit conduct" are defined in 18 U.S.C. Section 2256(1) and (2). A "minor" is defined as "any person under the age of eighteen years." The term "sexually explicit conduct" means actual or simulated:
   a.    Sexual intercourse, including genital genital, oral genital, anal genital, or oral anal, whether between persons of the same or opposite sex;
   b.    Bestiality;
   c.    Masturbation;
   d.    Sadistic or masochistic abuse; or
   e.    Lascivious exhibition of the genitals or pubic area of any person.

16.    The term "computer" as used herein is defined pursuant to Title 18 U.S.C. Section 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data

-4-

processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

17.     The term "Universal Resource Locator" (URL): A URL is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies the specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

18.     The term "Internet Protocol Address" (IP Address): This term refers to the fact that every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. There are two types of IP addresses; static and dynamic. A static address is permanent and never changes, such as ones used in cable modems. The dynamic address changes almost every time the computer connects to the Internet.

19.     The term "Internet Service Provider" (ISPs): This term refers to individuals who have an Internet account and an Internet-based electronic mail (e-mail) address must have a subscription, membership, or affiliation with an organization or commercial service which provides access to the Internet. A provider of Internet access and services is referred to as an Internet Service Provider or "ISP".

20.     "Web hosts" provide the equipment and services required to host and maintain files for one or more websites and to provide rapid Internet connections to those websites. Most hosting is "shared," which means that multiple websites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a Website, the client needs a server and perhaps a web hosting company to host it. "Dedicated hosting," means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a website. "Co location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support. Co location facilities offer customers a secure place to physically house the customers' hardware and equipment as opposed to keeping it in their offices or warehouse, where the potential for fire, theft or vandalism is greater.

21.     "Electronic Communication Service" refers to any service which provides to users thereof the ability to send or receive wire or electronic communications. Title 18 U.S.C. Section 2510(15).

22.     "Remote Computing Service" is a service that provides to the public computer storage or processing services by means of an "electronic communications system." Title 18 U.S.C. Section 2711.

-5-

23.    "Electronic Communications System" means any wire, radio, electromagnetic, photooptical, or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications.  Title 18 U.S.C. Section 2510(14).

24.    "Contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication. Title 18 U.S.C. Section 2510(8).

25.    "Electronic storage" means (a) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (b) any storage of such communication by an electronic communication service for purposes of backup protection of such communication. Title 18 U.S.C. Section 2510(17).

26.    "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

27.    "Child Pornography," as used herein, includes the definition in Title 18, U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. Title 18, U.S.C. §§ 2252 and 2256(2).

28.    "Spam" email refers to unsolicited (usually commercial) electronic mail messages sent in bulk to recipients.

29.    Cloud Computing is a model for enabling ubiquitous, convenient, on-demand network access to a shared pool of configurable computing resources that do not require end-user knowledge of the physical location and configuration of the system that delivers the services (e.g. Instead of storing files on your home computer, an alternate storage location could be a file storage service provider somewhere connected to the Internet, sometimes referred to as the "Cloud").

30.    Cloud Storage is a network of online storage where data is saved in virtual storage that is hosted by third parties.  The hosting companies operate large data centers, possibly across multiple servers.  Cloud storage allows users to save files and data online and access their information from anywhere using any computer that is connected to the Internet.

## TECHNICAL BACKGROUND/SNAPCHAT

31.    Snapchat is a mobile application ("app") made by Snap Inc. and is available through the Apple App Store and Google Play. The application provides a way to share moments with photos, videos, and text. One of Snapchat's differentiating features from other communications is that the

-6-

sender is able to set a variable amount of time that the message is viewable by the receiver. At the expiration of the time, the message is deleted from Snapchat's servers and disappears from the users' devices. If the receiver of a Snapchat message does not access the application on their device, the message remains undelivered. Snapchat stores undelivered messages for 30 days. After 30 days the messages are deleted from the company's servers.

32.     Snap Inc. is able to identify accounts using not only the Snapchat username but also an email address or telephone number associated with the account. Snapchat users have the following abilities, among others:

    a.   Snaps: A user takes a photo or video using the app's camera on the user's mobile device in real-time and then selects to which of their friends to send the message. Pictures and videos can also be sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users are able to save a photo or video they have taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

    b.   Stories: A user can add or video snaps to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories. Our Stories is a collection of user-submitted snaps from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event.

    c.   Memories: Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

    d.   Chat: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

33.     Information that Snapchat possess and maintains may include:

    a.   Personally Identifying Information: When a user creates an account they make a unique Snapchat username. This is the name visible to other Snapchat users. A user also enters a data of birth. This is supposed to prevent anyone under the age of 13 from using Snapchat. An email address is required to register a

Snapchat account. A new user also has to provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code that must be entered before proceeding with the registration step. However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date and IP address, as well as the timestamp and IP address of Snapchat account logins and logouts.

b. Usage Information: While a Snapchat message, story, chat, or other content may disappear, the record of who sent it and when still exists. Snapchat records and retains log files and information that are roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged, with which users the account communicates most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

c. Device Information: Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat.

d. Device Phonebook and Photos: If a user consents, Snapchat can access from their device's electronic phonebook or contacts list and images.

e. Message Content: Snapchat's motto is "delete is our default." Snapchat deletes a snap once it has been viewed or at another time, depending on certain user-determined settings. If the message is not read, because the user has not opened up the application, the message is stored for 30 days before being deleted. However, just because the snap no longer appears to the user does not necessarily mean that it is gone. For example, Snapchat has a feature called Replay. This allows users to view a previously viewed snap once per day. This feature is disabled by default and the user must opt-in to use Replay. Also, if a Snapchat user posts an image or video to the MyStory feature it can be viewed by their friends for 24 hours. If the user posted to the Our Stories feature, the snaps are archived and can be viewed through Snapchat.

f. Location Information: If a user has device-level location services turned on and has opted into location services on Snapchat, Snap Inc. will collect location data at various points during the user's use of Snapchat, and retention periods for location data vary depending on the purpose of the collection. Users have some control over the deletions of their location data in the app settings.

34.     Therefore, Snap Inc.'s records are likely to contain all the material just described, as available, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, account application, and content.

## CHARACTERISTICS OF COLLECTORS OF CHILD PORNOGRAPHY

35.     In my experience and training, and through my discussions with law enforcement officers who specialize in the investigation of child pornography, and of subjects who use the Internet and e-mail to gain access to child pornography, I have learned that individuals who use such technology are often child pornography collectors who download images and videos of child pornography. Moreover, I have learned that many subjects have saved numerous images to their hard drive, thumb drive, disks or CDs, and have kept that material for long periods of time. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, in other visual media or from literature describing such activity.

b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, drawings, or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child

-9-

pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.  Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## PROBABLE CAUSE TO SEARCH

36.    On January 22, 2024, FBI Norfolk received documentation from the Ernest Law Group, PLC, indicating a female juvenile, JANE DOE 1, was sexually abused and exploited during her time in the United States as a foreign exchange student in Gloucester, Virginia in 2021. The documentation provided was derived from the Spanish National Police Canary Islands Police Headquarters, Provincial Brigade of the Judicial Police, Family and Women's Unit (UFAM), Las Palmas Investigating Group. JANE DOE 1 disclosed and provided consent for a forensic examination of her cell phone to Spanish Authorities revealing ANTHONY RUGGIERO, date of birth: 1/12/1983, SSN: 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, sexually abused JANE DOE 1 during her time as a foreign exchange student in RUGGIERO's care in Gloucester, Virginia while she was 15 and 16 years old.

37.    Spanish Authorities' forensic examination revealed multiple sexually explicit messages between JANE DOE 1 and RUGGIERO on Snapchat, Instagram, and SMS. The messages also revealed multiple sexual acts had been performed between JANE DOE 1 and RUGGIERO. The following messages were identified in Snapchat between JANE DOE 1 and Snapchat display name "Tony" in the forensic examination:

a.  On or about February 7, 2022
   i.   TONY: Wanna know what was crazy?
   ii.  JANE DOE 1: Whaatt
   iii. TONY: That one evening we went driving in the snow in the jeep
   iv.  JANE DOE 1: yess
   v.   JANE DOE 1: the one I went to get tested lol
   vi.  TONY: Idk I just remember the drive home
   vii. JANE DOE 1: yup
   viii. TONY: was exciting
   ix.  JANE DOE 1: was fun
   x.   JANE DOE 1: was really goodddd
   xi.  TONY: Im glad we got to experience that together
   xii. JANE DOE 1: yesss
   xiii. TONY: It took some convincing in the beginning
   xiv. TONY: But once you started you loved it
   xv.  JANE DOE 1: was my first time
   xvi. TONY: I know baby
   xvii. JANE DOE 1: and I was scared
   xviii. TONY: Do you think about it now?

-10-

     xix. JANE DOE 1: yess
     xx. TONY: You told me before you never really thought abt it
     xxi. JANE DOE 1: i wish we could still do itttt
     xxii. TONY: Im glad we got to experience it together and share that special moment. Ty for letting it be me

b. On or about February 18, 2022
     xxiii. TONY: Do u like when I lick u?
     xxiv. JANE DOE 1: yesss
     xxv. TONY: I wanna again. You taste good
     xxvi. JANE DOE 1: I want you to do it again
     xxvii. JANE DOE 1: lol how can I taste good?
     xxviii. TONY: idk u just do
     xxix. TONY: Do u enjoy sucking on me?
     xxx. JANE DOE 1: yes I dooo
     xxxi. TONY: Im glad

c. On or about February 18, 2022
     xxxii. TONY: Do you lije when I finish in your moth? Or prefer it on you?
     xxxiii. JANE DOE 1: Like both
     xxxiv. JANE DOE 1: what do you prefer?
     xxxv. TONY: Whats your favorite part of all if it?
     xxxvi. TONY: It depends
     xxxvii. JANE DOE 1: like when we lie down together and have fun and kiss me
     xxxviii. TONY: Ok tomorrow could be fun lol

d. In or around February 2022
     xxxix. TONY: One thing I would like is if you could initiate more sometimes
     xl. TONY: Be the one to reach out and touch me
     xli. JANE DOE 1: Okiee
     xlii. JANE DOE 1: how?
     xliii. TONY: It makes me feel wanted and loved. It's a small thing that means a lot.
     xliv. TONY: Just start physical contact. reach ojt and hold my hand. Caress my arm. Rub my back. Kiss me.
     xlv. JANE DOE 1: ok!
     xlvi. TONY: If were alone you can even reach out and touch it.
     xlvii. TONY: Wake it up
     xlviii. TONY: Driving is fun
     xlix. TONY: Ill take the long way home lol
     l. [...]
     li. TONY: Enough time alone to send me a naughty pic?
     lii. JANE DOE 1: don't know. she's here right now

e. In or around February 2022
     liii. TONY: I wanna naughty video chat
     liv. TONY: Let you watch me

-11-

lv.   JANE DOE 1: Ok :)
lvi.   TONY: Want a naughty pic?
lvii.   JANE DOE 1: yess
lviii.   JANE DOE 1: are you home alone?
lix.   TONY: Sent
lx.   TONY: Yes alpne
lxi.   JANE DOE 1: Wanna be there
lxii.   JANE DOE 1: and suck it
lxiii.   TONY: Want you sitting on it
lxiv.   JANE DOE 1: and have fun

f.  In or around February 2022
lxv.   TONY: if someone here found out yet
lxvi.   JANE DOE 1: but why for the rest of your life?
lxvii.   TONY: thats how long the sentences are for that
lxviii.   JANE DOE 1: cuz I'm a minor?
lxix.   JANE DOE 1: ah
lxx.   TONY: Yep
lxxi.   JANE DOE 1: that's a long time in jail
lxxii.   TONY: that's why I was so scared
lxxiii.   TONY: When the nurses made those allehations
lxxiv.   JANE DOE 1: I didn't know it was that much

38.    The following messages were identified in Instagram between JANE DOE 1 and Instagram username "ruggiero7756" in the forensic examination:

a.  On or about October 5, 2021
i.   RUGGIERO7756: I love you hunny
ii.   JANE DOE 1: love you *emoji*
iii.   RUGGIERO7756: Cant wait to get home and kiss you

b.  On or about October 10, 2021
i.   RUGGIERO7756: You should change into pjs then come sit here again
ii.   JANE DOE 1: why?
iii.   RUGGIERO7756: There is no reception so I guess the texts didn't send
iv.   RUGGIERO7756: Cuz they are more comfy for me to rub when I rub your lega
v.   [...]
vi.   RUGGIERO7756: I wish I could sleep next to you
vii.   JANE DOE 1: yess
viii.   JANE DOE 1: would be amazing *emoji*
ix.   RUGGIERO7756: I knowwww
x.   JANE DOE 1: I know you know ittt

c.  On or about October 21, 2021
i.   RUGGIERO7756: Love u baby
ii.   JANE DOE 1: love you *emoji*

-12-

       iii.  RUGGIERO7756: Do you wanna cuddle when isabelle goes to karate?
       iv.  JANE DOE 1: sure:)

  d.  On or about October 29, 2021
        i.  RUGGIERO7756: Nice butt *emoji*
       ii.  JANE DOE 1: *emoji*
      iii.  RUGGIERO7756: I want to sleep next to you
      iv.  RUGGIERO7756: Hold you through the night
       v.  JANE DOE 1: I wish you could do it
      vi.  RUGGIERO7756: Well find a way

  e.  On or about October 31, 2021
        i.  RUGGIERO7756: Do you like wearing my clothes?
       ii.  JANE DOE 1: Yes *emoji*
      iii.  RUGGIERO7756: Lol
      iv.  RUGGIERO7756: Yw baby
       v.  JANE DOE 1: ty!
      vi.  JANE DOE 1: *emojis*
     vii.  RUGGIERO7756: Love u so much
    viii.  JANE DOE 1: I love you too *emoji*
      ix.  JANE DOE 1: I wish I could lie down with you:)
       x.  RUGGIERO7756: Same baby. She works next Saturday. Illl see abt making isabelle a playdate so we have the house to ourselves
      xi.  JANE DOE 1: ohh, yess *emoji*
     xii.  JANE DOE 1: that would be so nice
    xiii.  RUGGIERO7756: It will be so nice
    xiv.  RUGGIERO7756: Was typing that but dee trying to look
     xv.  JANE DOE 1: :/
    xvi.  RUGGIERO7756: She has been suspecting that we are closer than we tell her.
   xvii.  JANE DOE 1: when?
  xviii.  RUGGIERO7756: She saw you sitting close to me when I was laying down the other day and whens he left she made a face at me when you weren't looking
    xix.  RUGGIERO7756: Also a while ago she fussed at me when for cuddling you when you lied on me to nap when we were on the couch. Like a month ago
     xx.  JANE DOE 1: on ny?
    xxi.  RUGGIERO7756: No here. Before ny
   xxii.  […]
  xxiii.  RUGGIERO7756: You look so sexy in that witch costume. It was so hard not to touch you and hug you.
  xxiv.  JANE DOE 1: Do i?
   xxv.  RUGGIERO7756: Yea have no idea. You will find out how much when you wear it for me next weekend
  xxvi.  JANE DOE 1: sureee

xxvii.  RUGGIERO7756: I want you so badly. Its gonna be a long week away from you
xxviii.  JANE DOE 1: I know it will be
xxix.  JANE DOE 1: :((
xxx.  RUGGIERO7756: I wish you could touch me more. It feels so good
xxxi.  JANE DOE 1: okay:)
xxxii.  JANE DOE 1: I don't do it more cuz I don't know how to do it
xxxiii.  JANE DOE 1: *emoji*
xxxiv.  RUGGIERO7756: Its ok. Youll lesrn. Ill help. Head, bsck of neck, and back are best for me.
xxxv.  RUGGIERO7756: Lightly stroke or run your fingers slowly across me
xxxvi.  […]
xxxvii.  RUGGIERO7756: Can you send me sexy pictures later?
xxxviii.  RUGGIERO7756: Only for me
xxxix.  […]
xl.  JANE DOE 1: I don't know how to do that lol
xli.  RUGGIERO7756: Just try different things
xlii.  JANE DOE 1: u know I haven't have anybody to send that kind of pics
xliii.  RUGGIERO7756: I will tell you what I like
xliv.  JANE DOE 1: or u can tell me what do you like an I'll send them
xlv.  RUGGIERO7756: I like pics that tease. Almost show or just barely show things. And have your beautiful face in them. I love your face so much
xlvi.  […]
xlvii.  RUGGIERO7756: U wanna "go to the bathroom" and send me a pic?
xlviii.  JANE DOE 1: ok
xlix.  JANE DOE 1: but I still don't know how to do it
l.  JANE DOE 1: ://
li.  RUGGIERO7756: Just try cute face, barely showing something. A tease
lii.  JANE DOE 1: but I have my shirt on
liii.  RUGGIERO7756: U pull it up just enough to show
liv.  JANE DOE 1: ok
lv.  JANE DOE 1: better pull it up or down?
lvi.  RUGGIERO7756: Up with that shirt
lvii.  RUGGIERO7756: Down if its low cut like the witch costume
lviii.  JANE DOE 1: okay:)
lix.  RUGGIERO7756: Its ok if its not perfect baby. Well learn together
lx.  JANE DOE 1: *emoji*
lxi.  JANE DOE 1: and what about the top?
lxii.  JANE DOE 1: :/
lxiii.  RUGGIERO7756: Pull it up or down so your nips peek out
lxiv.  JANE DOE 1: ok
lxv.  JANE DOE 1: they went to bed:)
lxvi.  RUGGIERO7756: Nice. U can go to room and take shirt off
lxvii.  RUGGIERO7756: Big mirror there
lxviii.  JANE DOE 1: ok:)

-14-

    lxix. JANE DOE 1: shirt and top?
    lxx. RUGGIERO7756: Up to u baby
    lxxi. JANE DOE 1: I prefer not to take it off cuz I don't like sending pics by the phone but if you want I can do it I don't care
    lxxii. RUGGIERO7756: U can video chat me
    lxxiii. RUGGIERO7756: Cant talk
    lxxiv. [...]
    lxxv. RUGGIERO7756: U wanna show down below?
    lxxvi. JANE DOE 1: idk
    lxxvii. RUGGIERO7756: Up 2 u. Ok if no
    lxxviii. JANE DOE 1: maybe other day idk
    lxxix. RUGGIERO7756: Ok hunny
    lxxx. JANE DOE 1: this is weird

f.  On or about November 2, 2021
    i. RUGGIERO7756: What do you want to do?
    ii. JANE DOE 1: lie down with u
    iii. RUGGIERO7756: The whole time?
    iv. JANE DOE 1: and have fun
    v. JANE DOE 1: u?
    vi. RUGGIERO7756: Same. I love fun. How many times you wanna have fun?
    vii. JANE DOE 1: idk I don't think those things
    viii. JANE DOE 1: *emoji*
    ix. RUGGIERO7756: U can now that we are together
    x. JANE DOE 1: yea but still don't know
    xi. RUGGIERO7756: Ok baby. Well.do as many as u like
    xii. JANE DOE 1: how many times do you like?
    xiii. RUGGIERO7756: Idk. With you only done 2. If time wanted more
    xiv. JANE DOE 1: ok
    xv. RUGGIERO7756: I like it many times. And if more time can teach you more
    xvi. JANE DOE 1: okay:)
    xvii. [...]
    xviii. RUGGIERO7756: I wanna be under you and let you do the splits on top of me
    xix. JANE DOE 1: yess
    xx. RUGGIERO7756: That's sooooo hot
    xxi. JANE DOE 1: I knooww
    xxii. JANE DOE 1: but u don't have to be under me
    xxiii. JANE DOE 1: u can be on the top
    xxiv. RUGGIERO7756: Can try both
    xxv. RUGGIERO7756: But I wanna lie down, you do the splits on me, and bounce up and down while im inside
    xxvi. JANE DOE 1: yeaaa
    xxvii. RUGGIERO7756: Fuck that's hot. Making me hard thinking abt that
    xxviii. JANE DOE 1: yes it iss

-15-

xxix. RUGGIERO7756: Do you get wet down there when you think about that stuff?

xxx. JANE DOE 1: idk

xxxi. JANE DOE 1: what about you?

xxxii. RUGGIERO7756: Its diff for guys and girls. Girls get wet. Create lubrication in expectation of penetrarion. Guys get hard. Blood flows to their penis to make it harder so we can penetrate your wet pussy

xxxiii. RUGGIERO7756: I get hard when I think abt you that way

xxxiv. RUGGIERO7756: Like right now

xxxv. JANE DOE 1: I know it's different

xxxvi. JANE DOE 1: but idk that

xxxvii. [...]

xxxviii. RUGGIERO7756: What do you expect from what we have, in the long term?

xxxix. JANE DOE 1: What do you mean?

xl. RUGGIERO7756: From whatever we have going on

xli. JANE DOE 1: when I have to go back in spain?

xlii. RUGGIERO7756: Yes

xliii. JANE DOE 1: I really don't know

xliv. JANE DOE 1: I'm going to miss u a lot

xlv. RUGGIERO7756: And im going to miss you too baby

xlvi. RUGGIERO7756: But you know I cant leave dee and isabelle

xlvii. JANE DOE 1: yess

xlviii. JANE DOE 1: I know that

xlix. RUGGIERO7756: So we may be having fun and care abt each other but its just going to be a year of fun, love, and sharing experiences

l. RUGGIERO7756: Which im glad we have together

li. JANE DOE 1: yess:)

lii. RUGGIERO7756: But no matter how far apart we are ill always love you

liii. JANE DOE 1: and hopefully I can come back here for college or at least summer vacations

g. On or about November 14, 2021

i. RUGGIERO7756: Im horny

ii. RUGGIERO7756: Wanna c u naked

iii. [...]

iv. JANE DOE 1: wanna kiss u

v. RUGGIERO7756: Soon baby

vi. JANE DOE 1: yayyy

vii. RUGGIERO7756: Can u send sexy pic?

viii. RUGGIERO7756: Or vid chat quierly n show me?

39.    On November 28, 2022, JANE DOE 1 appeared before the Judge in the Courthouse of Las Palmas de Gran Canaria pursuant to a court order issued on November 9, 2022. Per the Clerk of the Court, JANE DOE 1 articulated the following in a statement to the Judge:

-16-

a. "Until that video chat she thought that the affectionate attitude of "Tony" was normal. She started to see that it was not normal when he tried to kissed her on the lips. She was 15 years old. She thinks it started in August. The first time it happened was in the house, in the lounge or in her room, she thinks it was in her room. It was a kiss and he tried to pull down her pants and her underwear and tried to have sexual relations with her. She moved his hand out of the way and he kept trying and asked her if she wanted to and she said no. She felt uncomfortable and thought it was just a one-off thing and it would not happen again because he had a wife and daughter. The following day he paid no attention and had relations with her in her room. It was in the morning. She thinks there was no one else at home. She was lying in her bed and he came up to her and kissed her and took her clothes off. At first it was caressing and kissing on various parts of her body, on her face and chest, and he told her to lie down a different way and she said no, and he did not respect her wishes; she did not say "no" directly. He took her lycra pants off and pulled down her underwear and started to penetrate her. He did not use protection or a condom. She had been on contraceptive pills for some time to regulate her menstruation, as she used to spend nearly a month on her period and these pills regulated it. She did not tell the agency or the family that she was taking contraceptives. He saw the pills in her room and asked her why she was taking them. After that time, there were more sexual relations, at first more spread out over time and then they were every day and several times a day. It happened in the house and in the car, which was very uncomfortable. On 3 January they went on a trip to New York. She was ill. She did a PCR test and he took the long way home in the car and he pulled over into a secluded place and told her to take her pants off and told her what position to put herself in. He kissed her, sucked her nipple and kissed her breast. Apart from vaginal sexual relations, the relations were also with "his penis in her mouth" and he told her to suck it. She believes she has a personality disorder and is easily influenced by others."

40.    On January 26, 2024, your affiant served a preservation request on Snap, Inc. and Meta Platforms, Inc. pursuant to 18 U.S.C. § 2703(f), requiring Snap, Inc. and Meta Platforms, Inc. to preserve all information associated with any and all accounts associated with 804-413-4100 and ruggwood@gmail.com.

41.    On February 22, 2024, Verizon Wireless responded to an administrative subpoena served on February 14, 2024, for telephone number 804-413-4100. Subscriber information revealed said telephone number was subscribed to Daiyanti Sundaralingam, address: 3379 Cappahosic Road, Gloucester, Virginia 23061.

42.    On March 20, 2024, Snap, Inc. responded to an administrative subpoena served on March 14, 2024, revealing telephone number 804-413-4100 was subscribed to Snapchat username: ruggwood; verified email address: ruggwood@gmail.com, Display name: Tony.

43.    An open-source query through the CLEAR database for ANTHONY RUGGIERO revealed the following information: ANTHONY RUGGIERO, date of birth: January 12, 1983. The most

-17-

recent address associated with RUGGIERO was listed as 3379 Cappahosic Road, Gloucester, Virginia 23061. CLEAR report also revealed Daiyanti Sundaralingam as a co-owner of the property located at 3379 Cappahosic Road, Gloucester, Virginia 23061.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

44.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

45.     On the basis of the above described facts, I respectfully submit that there is probable cause to believe that the stated Snap, Inc. account has been used with the coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b) which provides that whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not less than 10 years or for life.

46.     I further submit that probable cause exists to believe that evidence, fruits, and instrumentalities of such violations will be found within the information associated with the **SUBJECT ACCOUNT** (more particularly described in Attachment A) for evidence of activities relating to material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2422(b). Accordingly, I request that a warrant be issued authorizing FBI agents, with assistance from other law enforcement personnel, to search the accounts, obtain the information in the accounts and to seize all contents referred to in and to seize all contents referred to in Attachment B.

47.     Notwithstanding 18 U.S.C. § 2252/2252A or any similar statute or code, Snap, Inc. shall disclose responsive data by sending it to 11827 Canon Blvd., Suite 300, Newport News, Virginia, 23606, or via email to demaldonado@fbi.gov.

Respectfully submitted,

Desirae E. Maldonado
Special Agent
FBI Child Exploitation Task Force
Federal Bureau of Investigation

This affidavit has been reviewed for legal sufficiency by Assistant United States Attorney Devon Heath.

-18-

Reviewed:

Devon Heath
Assistant United States Attorney

Subscribed and sworn to before me this 6th day of May, 2024, in the City of Newport News,
Virginia.

The Honorable Douglas E. Miller
UNITED STATES MAGISTRATE JUDGE

-19-

## ATTACHMENT A

### DESCRIPTION OF THE PREMISES TO BE SEARCHED

This warrant applies to information associated with the Snapchat Accounts (the "**SUBJECT ACCOUNT**"): **ruggwood** in any part of the period of <u>August 1, 2021 to present</u>; that is stored at premises owned, maintained, controlled, or operated by Snap Inc. and headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405.

## ATTACHMENT B
### Particular Things to be Seized

I.      I.  **Information to be disclosed by Snap, Inc.,**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snapchat, Inc., Snapchat, Inc., is required to disclose the following information to the government for the account or identifier listed in Attachment A. Such information should include the below-described content of the subject account including any messages, records, files, logs, or information that have been deleted, but are still available to Snap, Inc., or have been preserved from Snapchat username **ruggwood.**

All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Snapchat passwords, Snapchat security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(a)     All activity logs for the account and all other documents for previous naps, stories and Chats, to include any metadata and/or content.

(b)     Content of sent snaps; story content, chat content;

(c)     Content of user's Memories, My Eyes Only, Snapchat's cloud-storage service;

(d)     All Logs, including sender, recipient, date, and time, concerning the previous Snaps sent to or from the Snapchat account of the above users; to include IP addresses associated to accounts listed above.

(e)     The types of service utilized by the user;

(f)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(g)    All privacy settings and other account settings, including privacy settings for individual Snaps, and all records showing which Snapchat users have been blocked by the account;

(h)    Any and all location data associated with the **SUBJECT ACCOUNT**;

(i)    All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

1.    All information described above in Section I, including correspondence, records, documents, photographs, videos, electronic mail, chat logs, and electronic messages that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2422(b) including, for each account or identifier listed on Attachment A, information pertaining to the following matters, including attempting and conspiring to engage in the following matters:

    a. Any person knowingly engaged in the sexual exploitation of children, as described in 18 U.S.C. § 2422(b).

2.    Credit card and other financial information including but not limited to bills and payment records;

3.    Evidence of who used, owned, or controlled the account or identifier listed on Attachment A;

4.    Evidence of the times the account or identifier listed on Attachment A was used;

5.    Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A and other associated accounts.

## III.    Disclosure by provider - By Order of the Court

1.   Snap, Inc. shall disclose responsive data, if any, by sending to FBI, Attn: SA Desirae Maldonado, 11827 Canon Blvd., Suite 300, Newport News, VA, 23606, using the US Postal Service or another courier service or electronic means notwithstanding 18 U.S.C. § 2422(b) or similar statute or code.